**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**NOT FOR PUBLICATION**

CRISTEN M. GLEASON,

    Plaintiff,

 v.               Civ. Action No. 96-4242 (KSH)

NORWEST MORTGAGE, INC.,

                 **SUPPLEMENTAL BRIEFING**
    Defendant.          **OPINION**

**Katharine S. Hayden, U.S.D.J.**

**I. INTRODUCTION: PURPOSE OF THIS OPINION**

    After the Third Circuit remanded this matter with instructions to reconsider the Court's award of prejudgment interest, the Court issued an order referring the parties to the Honorable Alfred M. Wolin, U.S.D.J. (Ret.), to mediate the prejudgment issues in dispute. (D.E. 219.) The parties were unable to reach agreement, but they identified certain issues that, if ruled upon, would assist in finally resolving the litigation. Thereafter the Court issued an order, D.E. 224, directing the parties to brief these topics: (1) when prejudgment interest begins and when does it terminate; (2) what rate of prejudgment interest should be employed and should that rate be compounded annually or daily; (3) what amount of the judgment is subject to prejudgment interest; and (4) whether the costs of borrowing to pay attorneys' fees are reimbursable pursuant to "all costs and expenses incurred or sustained by such prevailing party in connection with such suit or action" or constitute impermissible payment of interest on attorneys' fees. This opinion sets forth the Court's

1

rulings consistent with the parties' goal of resolving the financial issues that remain in this case.

As the parties are familiar with the background, the Court will focus its discussion on resolving the specific issues before it.

## II. NORWEST'S MOTION FOR LEAVE TO FILE A MOTION TO STRIKE PLAINTIFF'S MOTION SEEKING PREJUDGMENT INTEREST

Along with the submissions required by the supplemental briefing order, defendant Norwest Mortgage, Inc. ("Norwest") has filed a motion for leave to file a motion to strike plaintiff's original application for prejudgment interest and any supplemental applications. (D.E. 231.) The motion asserts that "because Mr. Gleason failed to file his request for prejudgment interest within ten days of the Court's entry of Final Judgment, he divested this Court of jurisdiction to award prejudgment interest -- a divestiture for which this Court has no legal or equitable remedy." (Def.'s Br. Mot. For Leave 4.)

Norwest bases its contention that this Court lacks jurisdiction on Federal Rule of Civil Procedure 59(e), which provides that "[a] motion to alter or amend a judgment must be filed no later than 10 days after the entry of the judgment," and Osterneck v. Ernst & Whinney, 489 U.S. 169, 176 (1989), wherein the Supreme Court determined that "a postjudgment motion for discretionary prejudgment interest involves the kind of reconsideration of matters encompassed within the merits of a judgment to which Rule 59(e) was intended to apply." Norwest also stresses that while Rule 6(b) normally allows district courts to extend the time for acts that may or must be done within a specified time, Rule 6(b)(2) provides that a Court must not extend the time to act under Rule 59(e)

motions. The viability of Norwest's motion rests on whether the "unique circumstances" doctrine applies.

In Thompson v. Immigration & Naturalization Serv., 375 U.S. 384, 387 (1964), the Supreme Court established the "unique circumstances" doctrine, whereby untimely acts may be treated as timely where the party has relied on the Court's assurances that the act was properly done. The Supreme Court then confirmed the continuing viability of the doctrine in Osterneck, the main case relied on by Norwest, before refining the doctrine further in Bowles v. Russell, 127 S. Ct. 2360 (2007). In Bowles, the Court addressed the petitioner's contention that the "unique circumstances" doctrine should apply to his untimely filed notice of appeal. The Court rejected this argument, holding that "the timely filing of a notice of appeal in a civil case is a jurisdictional requirement" that cannot be waived or forfeited by judicially-created equitable exceptions. 127 S. Ct. at 2366. The Court drew a sharp distinction between jurisdictional rules, those relevant time constraints grounded in statutory provisions, and court-made rules, which cannot create or withdraw federal jurisdiction. Most importantly, the Supreme Court limited the holding by noting that Bowles overrules Harris Truck Lines and Thompson only "to the extent [those cases] purport to authorize an exception to a jurisdictional rule." Id. The doctrine survives with respect to court-made rules.

Bowles makes clear that court-made rules do not create or destroy subject matter jurisdiction; only Congress may do so. To support its contention that Rule 59(e) is a jurisdictional rule, Norwest cites to language in Osterneck explaining that Rule 59(e), together with Rule 4(a)(4) of the Federal Rules of Appellate Procedure, work to implement the finality requirement of 28 U.S.C. § 1291. But the primary concern driving the

3

...

promulgation of Rule 59(e) was "speedy" adjudication, not finality.  Browder v. Director, Dep't of Corrections, 434 U.S. 257, 271 (1978).  Although Rule 59(e) undoubtedly impacts finality, neither 28 U.S.C. § 1291, nor any other statutory provision, can be said to govern Rule 59(e), nor can Rule 59(e) be characterized as implementing a statutory provision.  Rule 59(e) is a court-made rule that does not confer or limit jurisdiction, and thus Bowles does not bar application of the "unique circumstances" doctrine here.

The Court finds that "unique circumstances" do present themselves in this case.  Gleason's prejudgment interest motion was filed eleven days after entry of the judgment, one day outside of the Rule 59(e) time period.  However, not until this late in the game has Norwest raised the issue, presumably having stumbled upon it in the course of preparing its submissions.  Significantly, although this litigation has been before this Court for several proceedings and before the Third Circuit twice on appeal, at no time did a party, the Court, or the Third Circuit raise the issue of there being no entitlement to prejudgment interest because Gleason's motion was filed one day late.  What more assurance of the timeliness of a filing and entitlement to relief can a litigant have than almost seven years of adjudication without the specter of jurisdiction ever being raised?  Beyond that, suddenly tossing aside years of vigorous litigation and the considerable investment of judicial resources because the filing was a day late borders on the absurd.

Whether Norwest's motion can be viewed as careful lawyering or another example of "take no prisoners" litigation probably depends upon the eye of the beholder.  But its motion for leave to file this motion is denied here, where prejudgment interest was always a given issue in contention; where it confounded resolution of the case; where the issue was argued before the Third Circuit; and where, having read the Circuit's opinion, the

parties ramped up their best talents to put the best case before Judge Wolin on the subject. All that effort and attention amount to "unique circumstances" that strongly militate against ending the matter on a "Gotcha!"

## III. PREJUDGMENT INTEREST

A federal court sitting in diversity must apply the law of the forum state with respect to prejudgment interest. Jarvis v. Johnson, 668 F.2d 740, 746 (3d Cir. 1982); see also N. Bergen Rex Transport, Inc. v. Trailer Leasing Co., 158 N.J. 561, 565 (1999). Under New Jersey law, "[t]he allowance of prejudgment interest is a matter of discretion for the trial court." County of Essex v. First Union Nat. Bank, 186 N.J. 46, 61 (2006). "The primary consideration in awarding prejudgment interest is that the defendant has had the use, and the plaintiff has not of the amount in question; and the interest factor simply covers the value of the sum awarded for the prejudgment period during which the defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled." Musto v. Vidas, 333 N.J. Super. 52, 74 (App.Div. 2000).

**1. When Prejudgment Interest Begins and Ends**

The Third Circuit affirmed this Court's prior determination that prejudgment interest begins to run from November 1, 1996, the date of the wrongful sale, and thus the issue on remand is when prejudgment interest ends.

Gleason argues that he is entitled to prejudgment interest up until today because the issue of prejudgment interest remains unresolved, which he interprets as meaning that this Court has not issued a final judgment for prejudgment interest purposes. This runs contrary to the Third Circuit's observation that "the equities in this case suggest that the proper termination period for prejudgment interest should run until February 2006," the

5

date when this Court decided Norwest's Rule 59 motion and the judgment became final for purposes of appeal. Gleason v. Norwest Mortg., Inc., 253 Fed. Appx. 198, 205 (3d Cir. N.J. 2007). Gleason makes this argument even though Norwest made full payment of the judgment on December 14, 2007. The purpose of prejudgment interest is to compensate the plaintiff for the prejudgment period during which the defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled. Once payment had been rendered, Gleason retained the benefit of the monies to which he was entitled. The Third Circuit's remand specifically preserved the jury verdict, foreclosing the argument that any subsequent judgment somehow represents a new amount that was wrongfully withheld -– Gleason remains entitled to $1 million in damages and $1 million only. And thus the December 2007 payment fulfilling that judgment terminated prejudgment interest.

**2. Rate of Prejudgment Interest**

On remand, Gleason maintains his original position that the equities call for this Court to apply the national prime rate plus 2% compounded daily. (Pl.'s Suppl. Br. 13.) And Norwest maintains its position that the Court should once again apply the New Jersey statutory tort rate. (Def.'s Suppl. Br. 7.)

The national prime rate, which is reported daily in the press, reflects the financial market's estimate of the amount a commercial bank should charge a creditworthy commercial borrower to compensate for the opportunity costs of the loan, the risk of inflation, and the relatively slight risk of default. Till v. SCS Credit Corp., 541 U.S. 465, 479 (2004). The Third Circuit's opinion acknowledged the fairness of the prime rate as a benchmark for an award of prejudgment interest when it observed that "[h]ad Gleason

borrowed $875,000, presumably he would have paid the prime rate." Gleason v. Norwest Mortg., Inc., 253 Fed. Appx. 198, 205 (3d Cir. 2007).

"Generally, the measure of damages to the creditor will be the cost to him of borrowing the amount of money wrongfully withheld by the debtor. In most cases that will be the prime lending rate." Tobin v. Jersey Shore Bank, 189 N.J. Super. 411, 416 (App.Div. 1983). Departing either upwards or downwards from that benchmark transforms the applied rate from a workable and fair standard to the product of unnecessary speculation. Although Gleason claims that he can posit evidence establishing that he would have obtained a loan at prime plus 2%, no one can predict the loan he might have secured during the period at issue. He might have been in a position to procure a loan with a *more* favorable interest rate than prime. The Court concludes that the prime rate most fairly resolves this issue.

As to whether the interest should be compounded daily or annually, the Court must balance the competing goals of indemnifying Gleason for the wrongful detention of his funds and ensuring that the prejudgment award does not in effect punish Norwest for the delay. New Jersey courts ordinarily refuse to award compound interest because "it hastens the accumulation of debt." Henderson v. Camden County Mun. Util. Auth., 176 N.J. 554, 559 (2003); see also Johnson v. Johnson, 390 N.J. Super. 269, 276 (App.Div. 2007). Citing this, Norwest contends that the prejudgment award should employ simple interest. (Def.'s Suppl. Br. 12-13.) Gleason argues that the interest should be compounded on a daily basis because a commercial loan would have accrued interest compounded daily. (Pl.'s Suppl. Br. 14.) This position goes too far. In reaching an equitable resolution, the Court need not track the approach of a commercial lender, which has only its own interests at stake. Along

7

with litigation delays, this Court did not decide the Rule 59(e) motion in a timely manner. Thus, fierce litigation and unnecessary administrative delay combined to extend the applicable time period. The Court believes that the compounding of interest should not "hasten the accumulation of debt," nor should Gleason be punished by interest at a rock-bottom level. Compounding the interest on an annual basis represents a fair middle ground that ensures that the interest rate represents the actual effective rate while giving some recognition to the characteristic features of a commercially-available loan.

### 3. The Amount of the Judgment Subject to Prejudgment Interest

Despite the Third Circuit's determination that Gleason is not entitled to prejudgment interest on the $125,000 for lost employment damages, Gleason insists, surprisingly, that he is entitled to interest on the full $1 million judgment. (Pl.'s Suppl. Br. 16-17.) This, despite the passage where the Third Circuit explained: "An examination of the special verdict form reveals that the jury's award of $125,000 for lost employment damages was for future compensation. An award of prejudgment interest for future loss is not allowed under New Jersey law." Gleason v. Norwest Mortg., Inc., 253 Fed. Appx. 198, 204 (3d Cir. 2007). The opinion also continually references $875,000 as the amount this Court must address on remand. See id. at 204-205. New Jersey law precludes awarding Gleason prejudgment interest for his lost employment damages, and thus the only issue remaining with respect to the amount of the judgment subject to prejudgment interest is whether the $100,000 advance payment on the judgment reduces that amount.

Norwest argues that its $100,000 advance payment to Gleason on October 11, 2001 satisfied a portion of its prejudgment interest obligation. Norwest also seeks to capitalize, as indicated earlier, on that advance by arguing that Gleason should pay the heavy price of

losing prejudgment interest on unpaid amounts thereafter. The Court resolves this issue by applying a proportionality calculation. Norwest paid $100,000 on the outstanding amount of money, $1 million, that the jury verdict required Norwest to pay Gleason. The Court deems that this decision was made and accepted on the basis of numbers, not what the numbers represented. Thus, Norwest paid 10% of what it owed and should be credited with that 10% with respect to prejudgment interest by reducing the balance owed by 10%, or $87,500. The prejudgment interest rate, payable at the prime rate compounded on an annual basis, shall be applied to $787,500.

**4. Interest on Attorneys' Fees**

Grounded in the "American Rule" that fee shifting is disallowed in the absence of contractual or statutory authority, New Jersey courts have established a strong policy disfavoring the shifting of attorneys' fees. McGuire v. City of Jersey City, 125 N.J. 310, 326 (1991); see also Rendine v. Pantzer, 141 N.J. 292, 322 (1995); Gerhardt v. Continental Ins. Cos., 48 N.J. 291, 301 (1966). Parties may contract to shift attorneys' fees, but "even where attorney-fee shifting is controlled by contractual provisions, courts will strictly construe that provision in light of the general policy disfavoring the award of attorneys' fees." N. Bergen Rex Transp., 158 N.J. at 570. Against this hostile backdrop, Gleason argues that Section 8.11 of the SPA authorizes an award of prejudgment interest for the costs he incurred from financing the prosecution of this matter because those costs represent financing costs and not attorneys' fees. (Pl.'s Suppl. Br. 20.) The Court concludes that he is not entitled to prejudgment interest for attorneys' fees or the costs of borrowing to finance this action.

Gleason's efforts to characterize these costs as nothing more than run-of-the-mill contractual damages ignores that this section of the agreement is a fee-shifting provision subject to the boundaries established by New Jersey law, which makes clear that the plain language of the agreement controls and must be construed strictly.  Gleason in effect seeks interest on the costs of the costs of this litigation, something wholly unaccounted for in the agreement.  Even where the parties have contracted for fee shifting, that contractual obligation goes only as far as the contract provides -- anything further violates the strong policy against fee shifting in New Jersey.  Section 8.11 of the SPA is absolutely silent as to interest of any kind, and thus prejudgment interest was not contemplated by the parties in the making of the agreement and should not be awarded.  The costs Gleason seeks to recover, whether directly paid to his counsel or not, still flow from attorneys' fees and were incurred by Gleason as part of prosecuting this matter.  To hold that this somehow takes these costs out of the realm of attorneys' fees would allow Gleason to borrow funds to pay attorneys' fees, without having bargained for that contingency, as a means of skirting the strong policy disfavoring fee shifting.

The New Jersey Supreme Court has held that "[a]bsent a controlling contractual provision, permitting prejudgment interest on attorneys' fees would be contrary to our strong public policy disfavoring shifting of attorneys' fees." N. Bergen Rex Transp. v. Trailer Leasing Co., 730 A.2d 843, 852 (1999).  Gleason's position circumvents this clear language by cloaking what is in effect an award of interest on attorney's fees as something else.  Because New Jersey law prohibits interest on attorney's fees absent a specific agreement to such effect, Gleason is not entitled to prejudgment interest for attorneys' fees or the costs of borrowing to finance this action.

**IV. CONCLUSION**

As explained by the foregoing, the Court concludes that: (1) prejudgment interest begins on November 1, 1996 and terminates on December 14, 2007; (2) the interest rate for prejudgment interest should be the prime rate compounded on an annual basis; (3) $787,500 of the judgment is subject to prejudgment interest; and (4) Gleason is not entitled to prejudgment interest for attorneys' fees or the costs of borrowing to finance this action.

Dated: 7/30/08                                        /s/Katharine S. Hayden

                                                                              Katharine S. Hayden, U.S.D.J.